**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

FRANK GARCIA,

                    Plaintiff,

      v.

OSWALD BILOTTA,

                    Defendant.

Case No.: 1:23-CV-4146

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
jececchi@carellabyrne.com
(973) 994-1700

*Attorneys for Defendant Oswald Bilotta*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION………………………………………………………………………...1

BACKGROUND…………………………………………………………………….…5

ARGUMENT …………………………………………………………………………..6

  I.   STANDARD OF REVIEW……………………………………………………6

  II.   THE COMPLAINT SHOULD BE DISMISSED AS UNTIMELY………………………7

      A. Plaintiff's Claims are Time-Barred…………………………………………8

      B. Plaintiff's Claims Are Not Salvaged By the Discovery Rule or the Doctrine of Equitable Tolling …………………………………………………………..9

  III.  THE DETERMINATION OF UNTIMELESS IN *GARCIA I* PRECLUDES RELITIGATION OF THE ISSUE………………………………………………12

  IV.  DEFENDANT HAS NOT BEEN PROPERLY SERVED WITH THE COMPLAINT...14

CONCLUSION …………………………………………………………………………15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Rosen*,
2020 WL 3972025 (S.D.N.Y. July 14, 2020) …......................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)….......................................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)….......................................................................................7

*Berkley v. Williams*,
2022 WL 3452472 (6th Cir. July 11, 2022) …......................................................15

*Buechel v. Bain*,
97 N.Y.2d 295 (Ct. App. N.Y. 2001)…………………………………………………12

*Burda Media, Inc. v. Viertel*,
417 F.3d 292 (2d Cir. 2005)………………………………………………………………7

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017)………………………………………………………………13

*Dynegy Midstream Servs. v. Trammochem*,
451 F.3d 89 (2d Cir. 2006)…………………………………………………………..7

*German Am. Fin. Advisors & Tr. Co. v. Rigsby*,
623 F. App'x 806 (7th Cir. 2015)…......................................................................15

*Gerschel v. Christensen*,
143 A.D.3d 555 (1st Dept. 2016)….................................................................... 10

*Ghandour v Shearson Lehman Bros.*,
213 A.D.2d 304 (1st Dept. 1995) .......................................................................10

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
624 F.3d 106 (2d Cir. 2010).............................................................................6

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
12 N.Y.3d 132 (2009) ................................................................................. 7, 8

ii

*Ingrami v. Rovner*,
    45 A.D.3d 806 (2nd Dept. 2007) ...........................…………………….8

*La Russo v. St. George's Univ. School of Med.*,
    936 F. Supp. 2d 288 (S.D.N.Y. 2013)......................…………………..8

*Jones v. Safi*,
    58 A.D.3d 603 (2nd Dept. 2009) .....................................................11

*Kaufman v. Cohen*,
    307 A.D.2d 113 (1st Dept. 2003) ............................................... 8, 11

*Lewis v. City of New York*,
    844 N.Y.S. 2d 650 (Sup. Ct. 2007)................................................13

*Martin v. New York State Dep't. of Mental Hygiene*,
    588 F.2d 371 (2d Cir. 1978)...........................................................15

*Peralta v. St. Lukes Roosevelt Hosp.*,
    2015 WL 3947641 (S.D.N.Y. June 26, 2015)..................................6

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)..............................................................6

*Powers Mercantile Corp. v. Feinberg*,
    109 A.D.2d 117 (1st Dept. 1985) .................................................. 11

*Putter v. N. Shore Univ. Hosp.*,
    825 N.Y.S.2d 435 (2006) ..............................................................12

*Ross v. Louise Wise Servs., Inc.*,
    8 N.Y.3d 478 (2007) ..................................................................... 11

*Simcuski v. Saeli*,
    44 N.Y.2d 442 (1978) ................................................................... 11

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)..........................................................11

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)………………………………………………………7

*VA Management, LP v. Estate of Valvani*,
    192 A.D.3d 615 (1st Dept. 2021) .................................................. 8

*Taylor v. Sturgell,*
   553 U.S. 880 (2008)............................................................................................12

*Watley v. Dep't of Children and Families*,
   991 F.3d 418 (2d Cir. 2021)............................................................................13

*Zumpano v. Quinn,*
   6 N.Y.3d 666 (2006) ......................................................................................11

**Rules**

C.P.L.R. § 213 (8) ...............................................................................................10

C.P.L.R. § 214 (4) ................................................................................................. 7

C.P.L.R. § 308 .....................................................................................................15

Fed. R. Civ. P. 4(e) .............................................................................................14

Defendant Oswald Bilotta ("Defendant"), by and through his attorneys, respectfully submits this Motion to Dismiss the Complaint filed by Plaintiff Frank Garcia ("Motion").   For the reasons discussed herein, the Court should grant Defendant's Motion because Plaintiff's single claim is barred by the applicable statute of limitations, it has already been litigated, and it is insufficiently pled and served.

## **<u>INTRODUCTION</u>**

This lawsuit is Plaintiff's *second* attempt to pursue supposed claims against a whistleblower and his attorneys, each of whom assisted the Government in obtaining a historic recovery under the False Claims Act.   As the Honorable Joel Cohen of the Supreme Court of the State of New York found in dismissing identical claims against Defendant's attorneys, Plaintiff's claims are time-barred.   *See* Declaration of James E. Cecchi, Ex A. (Decision and Order on Motion to Dismiss), Ex. B (Transcript of Argument on Motion to Dismiss), Ex. C (Complaint in *Garcia, et al. v. Eric Young, Esq., et al.*, No. 652089/2021 (Sup. Ct.) ("*Garcia I*")).[1]   Now, *two years later*, the same holds true.   At bottom, Plaintiff's claims are frivolous (since they have no factual basis and are entirely fabricated) and border on an attempt at extortion.

More than eight years ago, Defendant's attorneys had limited interactions with Plaintiff regarding an action that Plaintiff had previously filed against Novartis related to Novartis's sales of the drug Xolair.   In March 2006, Plaintiff filed a *qui tam* complaint in the United States District Court for the District of Massachusetts.   That complaint was focused on unlawful practices in marketing Xolair, a respiratory drug, for off-label uses.   Plaintiff's 2006 complaint contained no

---

[1] The Court may take judicial notice of documents filed in New York state court.   *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (collecting cases).

allegations of False Claims Act violations related to either Lotrel or Diovan, or within Novartis's cardiovascular ("CV") drug division.   In January 2011, the United States officially declined to intervene in Plaintiff's case.   Plaintiff's co-relator, Angel Kelly, sought voluntary dismissal as a relator in the original action.   The Court dismissed Kelly from the action and allowed Plaintiff 60 days to amend his complaint to remove references to Kelly's allegations.   On June 8, 2012, Kelly filed another *qui tam* action ("2012 *Kelly* Complaint").   The 2012 *Kelly* Complaint still lacked any allegations relating to fraud in Novartis's CV sales division.   Four months later, on or around October 9, 2012, Plaintiff and another relator, Stephen Fauci, moved to consolidate their actions with Kelly's action and sought to file a joint consolidated amended complaint under seal.   The allegations in the consolidated amended complaint centered once again around Xolair and contained references to fraud carried out through an American Express Travelers' Cheque Program from 2001 to 2003.   Notably, the consolidated amended complaint did not contain any allegations regarding sham speaker programs or of any conduct ongoing past 2003, and contained only limited references to Diovan, Lotrel, and Exforge.

Defendant filed his original *qui tam* complaint against Novartis on January 5, 2011 (the "*Bilotta* Action").   In this complaint, Defendant alleged a fraudulent scheme within Novartis's CV sales division.   Specifically, this complaint contained detailed allegations regarding the payment of kickbacks to physicians through sham speaker programs in order to induce them to prescribe CV drugs Lotrel, Valturna, and Starlix.   None of the allegations contained in this complaint overlapped with the allegations in the actions filed by Plaintiff, Fauci, and Kelly.

On October 19, 2012, Defendant filed an amended complaint which still did not contain any allegations that overlapped with Plaintiff, Fauci, and Kelly's allegations.   On April 3, 2013,

2

Defendant filed a second amended complaint, adding detailed allegations regarding Novartis's illegal kickback schemed in promoting Tekturna, Diovan, and Exforge, in addition to the other CV drugs mentioned in his prior complaints.   At the time of that filing none of the above-mentioned complaints had alleged fraudulent schemes with regard to the promotion of Novartis's CV drugs. On April 26, 2013 the United States intervened in Defendant's action, and on May 29, 2013 the court lifted the seal on the case.

In mid-2013, Plaintiff and Kelly contacted Defendant's attorney, Eric Young, to seek representation for the limited purpose of transferring their case to the Southern District of New York and to seek that the Government reconsider its decision not to intervene in Plaintiff's case. Young agreed to represent Plaintiff and Kelly for that limited purpose.   In the process of this representation Plaintiff and Kelly provided Young with documents related to the sales and promotion of Xolair, the subject of their complaint.   All documents were reviewed for the sole purpose of seeking to have the case transferred and for the Government to reconsider its decision not to intervene.

After discussions with the Office of the U.S. Attorney for the Southern District of New York 2013, Young informed Plaintiff and Kelly that the U.S. Attorney's office had declined to transfer Plaintiff's and Kelly's case from the District of Massachusetts.   Young further confirmed that any relationship between Defendant's attorneys and Plaintiff and Kelly was concluded and that all documents related to the limited basis representation had previously been collected by Plaintiff.

The *Bilotta* Action continued through the litigation process and resolved in 2020.   In September 2020, Plaintiff's counsel contacted Young by way of a letter that purported to show the

similarities between the complaints in Defendant's action and Plaintiff's action, which had been dismissed.   Defendant's attorneys reviewed the letter from Plaintiff and discovered that it contained little more than falsehoods and inaccuracies, and informed Plaintiff's counsel of as much, pointing out the many incorrect statements the letter contained.   Plaintiff's counsel expressed embarrassment about the misstatements they had communicated to Defendant's counsel.   Defendant's attorneys did not hear from Plaintiff or his attorneys again until they received the complaint filed in *Garcia I* in April 2021.

It is apparent that the instant action represents the latest in a series of attempts by Plaintiff to conjure a way to get paid for claims he originally made in 2006 – claims that are entirely unrelated to the *Bilotta* Action despite his false allegations to the contrary.   As with his September 2020 letter and prior lawsuit, the complaint is littered with demonstrable falsehoods and gross distortions of the facts underlying the *Bilotta* Action and the relationship between Plaintiff and Defendant's attorneys.   Unfortunately for Plaintiff, however, his unfounded claims are pressed too late and, as discussed more fully herein, should be dismissed as untimely pursuant to the applicable statute of limitations.   Moreover, the statute of limitations issue was fully litigated in the Supreme Court of the State of New York, and Plaintiff's claims are, thus, precluded.

Plaintiff also failed to validly serve Defendant with the Complaint, instead contacting Defendant's wife while she was unprepared to appropriately respond and simply leaving paperwork on Defendant's doorstep.   *See* ECF No. 6 (Affidavit of Service).

The Complaint, designed to harass and distort, suffers from fatal pleading issues.   Worse still, for Plaintiff, it is literally a day late and a dollar short.   The Court should decline to further tax judicial and litigant resources by entertaining it beyond this juncture.

4

## BACKGROUND

In March, 2006, Plaintiff and Kelly first filed their original *qui tam* complaint in the District of Massachusetts. *See* Compl. at ¶ 17. In that original complaint, Plaintiff and Kelly alleged that Novartis had engaged in unlawful practices in marketing Xolair, a respiratory drug, for off-label uses. *See id.* The 2006 complaint contained no allegations of False Claims Act violations related to either Lotrel or Diovan, or within Novartis's cardiovascular drug division. *See id.*

Defendant, with the assistance of his attorneys, filed a *qui tam* complaint against Novartis on January 5, 2011. *Id.* at ¶¶ 20-22.

Also in January 2011, the United States and the majority of the States named as plaintiffs declined to intervene in the 2006 action filed by Plaintiff. *See id.* at ¶ 20.

Plaintiff alleges that he and his co-relator contacted Young in March 2012, while Defendant's action was still under seal, and that Young informed them of a potential conflict of interest. *Id.* at ¶¶ 24-25. Plaintiff further alleges that, after being informed of the potential conflict, Plaintiff and his co-relator provided Young with a copy of their confidential disclosure statements which included details and evidence about Novartis using kickbacks to promote Diovan. *Id.* at ¶ 29.

Plaintiff alleges that, in April or May 2013, the Government filed a complaint in intervention in Defendant's action and ordered that action to be unsealed such that it became a matter of public record. *See id.* at ¶ 34.

Plaintiff alleges that he and his co-relator contacted Young again, seeking legal help and requesting that Young act as Plaintiff's and co-relator's legal counsel in an attempt to consolidate their case with Defendant's action. *See id.* at ¶¶ 35-37.

5

Plaintiff alleges that in July 2013, Young agreed to act as Plaintiff's legal counsel but did not disclose that he had a conflict of interest because Bilotta also had claims based on Novartis's Diovan kickbacks.  *See id*. at ¶¶ 35-37.   Plaintiff admits, however, that by this time, the operative complaint in the *Bilotta* matter contained allegations related to Diovan and that he was aware of the *Bilotta* complaint which was now in the public record.  *Id.* at ¶¶ 33.

Plaintiff alleges that, in January 2014, Young informed Plaintiff that he and his colleagues would not be in a position to represent them.  *See id*. at 42.

On May 18, 2023, nearly **eight years** after the unsealing of Defendant's action and the termination of any relationship between Plaintiff and Defendant's attorneys, and **two years** after the dismissal of his Plaintiff's first action, Plaintiff brought this suit against Defendant.

## ARGUMENT

### I.    STANDARD OF REVIEW

A statute of limitations defense may be raised by way of a motion to dismiss if the defense appears on the face of the complaint.  *See Staehr*, 547 F.3d at 425; *see also La Russo v. St. George's Univ. School of Med.*, 936 F. Supp. 2d 288, 296-97 (S.D.N.Y. 2013) ("Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on statute of limitations grounds because the expiration of the statute of limitations presents an affirmative defense.").   Similarly, issue preclusion "may be decided on a motion to dismiss."  *Peralta v. St. Lukes Roosevelt Hosp.*, 2015 WL 3947641, at *4 (S.D.N.Y. June 26, 2015).   In doing so, "a district court may rely on matters of public record . . . including case law."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required

to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).   However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Finally, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and 'is inflexible and without exception'").   The plaintiff bears the burden of proving adequate service.  *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298–99 (2d Cir. 2005).

## II.      THE COMPLAINT SHOULD BE DISMISSED AS UNTIMELY

Plaintiff's complaint, on its face, establishes that his claims are untimely and should be dismissed.   Plaintiff asserts a single claim for unjust enrichment.   Although New York law does not provide for a single statute of limitations for unjust enrichment claims, courts determine the applicable limitations period, either three years under C.P.L.R. § 214 (4) or six years under C.P.L.R. § 213 (1), by analyzing the substantive remedy that the plaintiff seeks.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009).   As Judge Cohen found, under

either of the applicable statutes of limitation, Plaintiff's claim must be dismissed.

### A.     <u>Plaintiff's Claims Are Time-Barred</u>

Plaintiff asserts his unjust enrichment claim in equity in an apparent attempt to avail himself of the six-year statute of limitations under C.P.L.R. § 213 (1).   Plaintiff's machination, however, is fruitless.   Where, as here, "the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR § 214 (4), which has a three-year limitations period."   *See IDT Corp.,* 12 N.Y.3d at 139 (citations omitted); *see also Ingrami v. Rovner*, 45 A.D.3d 806, 808 (2d Dept. 2007) (applying three-year statute of limitations to unjust enrichment claim because plaintiff sought monetary, as opposed to equitable, relief). The court in *IDT Corp.* noted that it is important to look "to the reality, rather than the form" in determining which statute of limitations to apply.   *IDT Corp.*, 12 N.Y.3d at 139, 140.   In *IDT Corp.*, the plaintiff brought a claim for breach of fiduciary duty ostensibly seeking disgorgement of profits despite the plain fact that what it actually sought was a monetary remedy.   *Id.* at 140. The same is true here and, as a result, a three-year statute of limitations should apply to Plaintiff's claim.   *See VA Management, LP v. Estate of Valvani*, 192 A.D.3d 615 at *1 (1st Dept. 2021) (where plaintiff was seeking monetary relief, characterization of that relief as "disgorgement" did not convert claim into one for equitable relief to which a six-year statute of limitations would apply.).

The appropriate statute of limitations is three-years.   *Ingrami*, 45 A.D.3d at 808.   Further, the "statute of limitations on an unjust enrichment claim begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution."   *Id.* (citations omitted); *see also Kaufman*, 307 A.D.2d at 127 ("a claim for unjust enrichment accrues upon the occurrence of the alleged wrongful

act giving rise to restitution.").   By Plaintiff's own admission, the alleged wrongful acts occurred

upwards of **10 years** before Plaintiff filed his complaint in the present action.   It is beyond cavil

that Plaintiff's unjust enrichment claim is untimely under either the three-year or six-year statute

of limitations and is, thus, time-barred.

### B.      Plaintiff's Claims Are Not Salvaged By the Discovery Rule or the Doctrine of Equitable Tolling

Defendant anticipates that Plaintiff might argue that the discovery rule or doctrine of

equitable tolling relives him of the time bar imposed by the statute of limitations.[2]   Neither

doctrine saves Plaintiff's claim, which is plainly time-barred and should be dismissed.

At the outset, it is imperative to note that any legal principle that could potentially relieve

Plaintiff of a time bar imposed by the applicable statute of limitations relies on some alleged act

of fraud or misrepresentation by Defendant.   Yet, the Complaint is entirely devoid of any

allegations whatsoever of Defendant's conduct, much less conduct that could be reasonably

characterized as fraudulent or dishonest.   Any allegations of specific conduct (even false

allegations) relate solely to conduct by Defendant's attorneys.   The absence of any allegations of

Defendant's conduct is fatal to any the application of any doctrines tolling or otherwise

augmenting the statute of limitations.

Under New York law, the "discovery rule" provides that in "an action based upon fraud;

the time within which the action must be commenced shall be the greater of six years from the date

---

[2] The section of the Complaint setting forth Plaintiff's single cause of action for unjust enrichment gratuitously suggests Plaintiff's claim sounds in "equity" and Defendant's conduct was "wanton, willful, and malicious."   *See* Compl. at ¶¶ 73, 75.   The Court need not credit these conclusory assertions that are plainly at odds with the facts of the *Bilotta* Action and have already been rejected by Judge Cohen.

the cause of action accrued or two years from the time the plaintiff [] discovered the fraud, or could with reasonable diligence have discovered it."   N.Y. C.P.L.R. § 213 (8).

As an initial matter, claims for unjust enrichment are not subject to the discovery rule.   *See Gerschel v. Christensen*, 143 A.D. 3d 555, 556 (1st Dept. 2016) (citations omitted).   Therefore, the discovery rule provides no means for Plaintiff to escape dismissal of his untimely unjust enrichment claim.   Even if the discovery rule might conceivably apply, Plaintiff's delay in filing his Complaint—over six years after the claim accrued and ***more than two years*** after the filing of *Garcia I*—forecloses any reliance on the additional time afforded under the discovery rule, also assuming Plaintiff could even prove its applicability (he cannot).   Plaintiff has not attempted to plead any facts that would indicate fraud or misrepresentation by Defendant, or even suggest that Defendant engaged any efforts to mislead or conceal the accrual of any potential claim from Plaintiff.   Without such allegations of fraud, the discovery rule cannot apply.

Again, even if Plaintiff was able to allege fraud, however, it would not save his claim from dismissal.   As discussed above, Plaintiff filed his claim more than six years after the claim accrued.   And Plaintiff's own pleadings make it clear that if there was any fraud by Defendant, Plaintiff discovered it, or could have discovered it with reasonable diligence, in 2013.   An inquiry as to the time that a plaintiff could, with reasonable diligence, have discovered the fraud "turns upon whether a person of ordinary intelligence possessed knowledge of facts from which the fraud could be reasonably inferred."   *Ghandour v Shearson Lehman Bros*., 213 A.D.2d 304, 305-06 (1st Dept. 1995).   Plaintiff admits in his Complaint that he was aware of the *Bilotta* complaint and the allegations contained therein (which Plaintiff alleges were the result of information obtained by Defendants from Plaintiff) by, at the latest, June 2013.   *See* Compl. at ¶¶ 33-37; *see also* Ex. C at

¶¶ 30, 32, 33, 34.  As a result, if there were any fraud (there was not), Plaintiff was, or should

have been aware of it in 2013 and the time for asserting any such claim under the discovery rule

has long since passed.

Plaintiff's other potential ploy to avoid dismissal of his claim, the equitable tolling doctrine,

is equally unavailing.   In order for equitable estoppel to toll the statute of limitations, a plaintiff

must demonstrate that they were induced by fraud, misrepresentation, or deception to refrain from

filing a timely action.  *Zumpano v. Quinn*, 6 N.Y.3d 666 (2006); *Jones v. Safi*, 58 A.D.3d 603

(2nd Dept. 2009).   As discussed above, Plaintiff has not alleged fraud or misrepresentation

beyond vague and conclusory assertions that the Court must set aside in evaluating the Complaint.[3]

In addition, a plaintiff cannot rely upon the same acts that constitute the alleged basis of the

substantive claim to support equitable estoppel, "the later fraudulent misrepresentation must be for

the purpose of concealing the former tort."  *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491

(2007).   There must be some conduct on the part of the defendant after the initial wrongdoing;

mere silence does not suffice.   *Id.*   Due diligence on the part of the plaintiff is an essential element

of the doctrine of equitable estoppel.   *Simcuski v. Saeli*, 44 N.Y.2d 442, 450 (1978).

Plaintiff cannot avail himself of equitable estoppel, as the facts clearly establish that when

Plaintiff contacted Defendant's attorneys on March 30, 2016, he possessed sufficient information

---

[3] Furthermore, Plaintiff cannot escape the ramifications of his tardiness by belatedly alleging fraud
where none exists.   "Courts will not apply the fraud statute of limitations if the fraud allegation is
only incidental to the claim asserted; otherwise, fraud would be used as a means to litigate stale
claims."  *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dept. 2003) (*quoting Powers Mercantile
Corp. v. Feinberg*, 109 A.D.2d 117, 120, (1st Dept. 1985).   Thus, "where an allegation of fraud
is not essential to the cause of action pleaded except as an answer to an anticipated defense of
the statute of limitations, courts 'look for the reality, and the essence of the action and not its mere
name.'"  *Id.*

available to require him to investigate whether there was a basis for a cause of action against Defendant. *Putter v. N. Shore Univ. Hosp.*, 825 N.Y.S.2d 435 (2006) (finding equitable estoppel inappropriate as a matter of law where plaintiff has sufficient information to investigate whether they have a cause of action).

As Plaintiff alleges **in his own complaint**, the *Bilotta* Action was public knowledge. Defendant did not make any misrepresentation to Plaintiff regarding that litigation and, even if he had, Defendant could have easily gotten any pertinent information himself by exercising a modicum of due diligence.

Accordingly, Plaintiff's untimely, and unfounded, claim cannot be resurrected by the application of the equitable estoppel doctrine.

## III.   THE DETERMINATION OF UNTIMELESS IN *GARCIA I* PRECLUDES RELITIGATION OF THE ISSUE

Under New York law, "the doctrine of issue preclusion, also known as collateral estoppel, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity.'" *Aetna Life Ins. Co. v. Rosen*, 2020 WL 3972025 (S.D.N.Y. July 14, 2020); *see also Buechel v. Bain*, 97 N.Y.2d 295, 303 (Ct. App. N.Y. 2001) (same).   "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008).

Specifically, issue preclusion bars relitigation of an issue if: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; [ ] (4) the resolution of the issue was necessary to support a valid and final judgment on the merits[;] . . . [and (5) ]

12

application of the doctrine is fair." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017); *see Lewis v. City of New York*, 844 N.Y.S. 2d 650, 655 (Sup. Ct. 2007) (setting forth same elements under New York law).

There can be no legitimate dispute that the exact statute of limitations issue barring Plaintiff's claim in this action were fully and necessarily litigated in *Garcia I*.   *See Watley v. Dep't of Children and Families*, 991 F.3d 418, 425-26 (2d Cir. 2021) ("An issue is actually litigated when it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.") (internal citation omitted).   First, the facts alleged in *Garcia I* that were dispositive of the statute of limitations issue are materially identical to those pled in the Complaint.   *Compare* Complaint *with* Ex. C; *see also* Cecchi Decl., Ex. D (Notice of Motion to Dismiss).   The issue was decided by Judge Cohen, who ordered the dismissal of the operative complaint in *Garcia I* for the reasons explained in detail on the record following oral argument on the motion to dismiss. *See* Ex. A, Ex. B at 30-39.   Plaintiff had a full and fair opportunity to litigate the issue between full briefing and oral argument on the issue.   *See id.*; *see also* Cecchi Decl., Ex. E (Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss First Amended Complaint).   Since resolution of the issue against Plaintiff resulted in dismissal of *Garcia I*, it was necessary to support a valid and final judgment.   *See* Ex. A, Ex. B at 30-39.   Judge Cohen's application of the doctrine was well-reasoned, considered the arguments presented by each side, and plainly fair.   *See id.*

## IV.   DEFENDANT HAS NOT BEEN PROPERLY SERVED WITH THE COMPLAINT

Service of process upon an individual within a judicial district of the United States is governed by Rule 4(e) which states that service may be completed by:

(1) following state law for serving a summons in an action brought in courts of

13

general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

    a) delivering a copy of the summons and of the complaint to the individual personally;

    b) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

    c) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).   Under New York law, service may be made by the following methods:

(1) by delivering the summons within the state to the person to be served; or

(2) by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other . . . .

(3) by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318 . . . .

(4) where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other . . . .

(5) in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

14

C.P.L.R. § 308.   Moreover, the fact that a defendant has notice of a lawsuit does not remedy defective service.   *Martin v. New York State Dep't. of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978).

On the face of the Affidavit of Service ("Affidavit") filed by Plaintiff, it is clear that no valid service was effectuated.   *See* ECF No. 6.   The Affidavit confirms that Defendant was not personally served.   *See id.*   Instead, the Affidavit apparently seeks to establish that Defendant's wife was validly served with the Complaint.   Not so.   The process server hired by Plaintiff appeared at Defendant's home and contacted Defendant's wife, who was not dressed or prepared to receive visitors.   *See id.*   Defendant's wife indicated the same.   *See id.*   The process server then left the Complaint on the doorstep of the residence.   *See id.*   No further efforts at effective service were made.   This does not meet the requirements for effective service.   *See Berkley v. Williams*, 2022 WL 3452472, at *3 (6th Cir. July 11, 2022) (declining to find proper service was made where process server spoke with defendant's wife and subsequently left paperwork on the defendant's doorstep); *cf. German Am. Fin. Advisors & Tr. Co. v. Rigsby*, 623 F. App'x 806, 808 (7th Cir. 2015) (leaving papers on defendant's door is insufficient).

## <u>CONCLUSION</u>

As set forth in his own pleading, Plaintiff's claim is clearly untimely, whether the court opts to apply either the three-year or six-year statute of limitations and Plaintiff's tardiness cannot be washed away by either the discovery rule or the doctrine of equitable tolling.   Moreover, the Complaint has not even been properly served and dismissal is warranted in the first instance on that basis alone.   For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss.

Dated: August 1, 2023                    Respectfully submitted,

Roseland, New Jersey

                                         CARELLA, BYRNE, CECCHI,
                                         OLSTEIN, BRODY & AGNELLO, P.C.
                                         5 Becker Farm Road
                                         Roseland, New Jersey 07068
                                         jececchi@carellabyrne.com
                                         (973) 994-1700

                                         By:   /s/ James E. Cecchi
                                                   JAMES E. CECCHI

                                         *Attorneys for Defendant Oswald Bilotta*

16