UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                          :
FRANK GARCIA,                                             :
                                                          :
                          Plaintiff,                      :
                                                          :                    23-CV-4146 (VSB)
            - against -                                   :
                                                          :                    **OPINION & ORDER**
OSWALD BILOTTA,                                           :
                                                          :
                          Defendant.                      :
                                                          :
------------------------------------------------------------X

Appearances:

Jonathan Ellery Neuman
Law Offices of Jonathan E. Neuman, Esq.
Fresh Meadows, NY
*Counsel for Plaintiff*

James E. Cecchi
James A. O'Brien III
Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
Roseland, NJ
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

         In this action, Plaintiff Frank Garcia alleges that Defendant Oswald Bilotta ("Defendant

or "Bilotta") misappropriated his confidential information to unjustly enrich himself and secure a

$109 million relator award in a qui tam action brought against Novartis AG and other related

entities.  Before the Court is Bilotta's motion to dismiss for insufficient service of process under

Federal Rule of Civil Procedure 12(b)(5) or, in the alternative, for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6)[1], as well as Bilotta's motion for sanctions against

---

[1] Although Bilotta's motion is styled as one pursuant to Rule 12(b)(6) only, I construe it as seeking dismissal under
Rule 12(b)(5) as well because it includes arguments related to the sufficiency of service of process.  *See PH Int'l
Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009 WL 859084, at *2 (S.D.N.Y. Mar. 31, 2009) (construing

Garcia and his counsel under Federal Rule of Civil Procedure 11.  Because I conclude that this action is untimely, Bilotta's motion to dismiss is GRANTED with prejudice.  In addition, Bilotta's motion for sanctions against Garcia and his counsel is GRANTED IN PART and DENIED IN PART.

## I.  <u>Factual Background & Procedural History</u>[2]

In March 2006, Frank Garcia and his co-relator (together, "Garcia") filed a qui tam action in the District of Massachusetts, alleging that Novartis AG and other related entities paid kickbacks to physicians who submitted false Medicare and Medicaid claims for the drug Xolair (the "Massachusetts Suit").  (Compl. ¶ 17.)  In January 2011, the United States declined to intervene in the suit, "and Plaintiffs continued to pursue their claims on their own."  (*Id.* ¶ 20.)

In January 2011, Oswald Bilotta—represented by Eric Young of Shepherd, Finkelman, Miller & Shah, LLP—filed a separate qui tam lawsuit against Novartis in the Southern District of New York alleging a kickback scheme related to the drugs Lotrel, Valturna, and Starlix (the "New York Suit").  (*Id.* ¶¶ 21–22.)  "This complaint did not allege the payment of kickbacks for Diovan."  (*Id.* ¶ 21.)

In March 2012, Garcia—unaware of the New York Suit—asked Young to represent him in the Massachusetts Suit.  (*Id.* ¶¶ 21–24.)  Young explained that he might have a conflict of interest, but nonetheless had a series of conversations with Garcia about the nature of the claims in the Massachusetts Suit.  (*Id.* ¶¶ 25–26.)  During these conversations, Garcia provided Young

---

motion to dismiss pursuant to Rule 12(b)(6) as one under Rule 12(b)(5).

[2] The facts in this section are based upon the factual allegations set forth in the complaint, (Doc. 1 ("Complaint" or "Compl.")), as well as the documents "incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).  I assume the allegations in the Complaint to be true in considering the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such finding.

with his sealed filings and confidential disclosure statements, which included detailed evidence about the Diovan kickback scheme.  (*Id.* ¶¶ 28–29.)  Young, however, ultimately declined to take on Garcia's case due to time constraints.  (*Id.* ¶ 30.)

In March 2013, Bilotta amended his qui tam complaint to add allegations and claims related to the Diovan kickback scheme, purportedly based on information that Garcia had provided to Young during their meetings.  (*Id.* ¶ 33.)  About one month later, the Government intervened in the New York Suit.  (*Id.* ¶ 34.)

In May 2013, Garcia reached out to Young again, this time to inform him that he had filed an amended complaint in the Massachusetts Suit.  (*Id.* ¶ 35.)  At Young's request, Garcia provided him with a copy of the amended pleading, whereupon Young agreed to represent him for the purpose of consolidating the Massachusetts and New York Suits.  (*Id.* ¶¶ 36–37.)  In support of this effort, Garcia met with Young and provided him with additional evidence about the Diovan kickback scheme.  (*Id.* ¶¶ 38–39.)  In July 2013, Bilotta allegedly used this information to amend his complaint and add even more allegations about Diovan.  (*Id.* ¶ 40.)  In January 2014, Mr. Young informed Garcia that he could no longer represent him.  (*Id.* ¶ 42.)

Six and a half years later, in July 2020, the United States settled the claims in the New York Suit, including those related to the Diovan kickback scheme, for $678 million.  (*Id.* ¶ 44.)  As a result of the settlement, Bilotta received a $109 million qui tam relator award.  (*Id.* ¶ 45.)

Based on these events, Garcia sued Bilotta on May 18, 2023 for unjust enrichment.  (Compl.)  On August 1, 2023, Bilotta filed a motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) or, alternatively, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 8.)  On September 15, 2023, Garcia filed a brief in opposition to Bilotta's motion to dismiss.  (Doc. 16.)  On October 6, 2023, Bilotta filed a reply

in support of his motion to dismiss.  (Doc. 19.)

On October 21, 2024, Bilotta moved for sanctions against Garcia and Garcia's attorney, Jonathan Ellery Neuman.  (Doc. 20.)  On November 25, 2024, Garcia filed a brief in opposition to the sanctions motion, (Doc. 29), and on December 9, 2024, Bilotta filed a reply, (Doc. 32).

On July 25, 2025, I held a telephonic conference with the parties to discuss the citizenship of the parties, as the Complaint asserts diversity-of-citizenship jurisdiction but did not adequately allege the domicile of the individuals that are party to this action.  (*See* Doc. 33.)  On July 28, 2025, both parties submitted affidavits attesting to their state of domicile.  (*See* Doc. 36 (Bilotta is domiciled in Florida, has no intention of moving, has a Florida driver's license, and is registered to vote in Florida); Doc. 37 (Garcia is domiciled in New Jersey, has no intention of moving, has a New Jersey driver's license, and is registered to vote in New Jersey).)   In light of the discussion on the record at the July 25, 2025 conference and the subsequent affidavits submitted by the parties, I am satisfied that complete diversity exists in this case and I have jurisdiction over this action.

## II.  <u>Legal Standards</u>

### A.  *Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process*

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)).  When "a defendant challenges service of process, the burden of proof is on the plaintiff to show the adequacy of service."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (internal quotation marks omitted).  "Plaintiff must meet this burden by making a prima facie case of proper service through specific factual allegations and

4

any supporting materials." *Sikhs for Just. v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (internal quotation marks omitted). "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, a court may look to materials outside the complaint to determine whether it has jurisdiction. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

### B. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If a plaintiff has not "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

A motion to dismiss a claim as untimely under the relevant statute of limitations is treated as a motion to dismiss for failure to state a claim upon which relief can be granted because "Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on statute of limitations grounds." *La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 297 (S.D.N.Y. 2013) (citation omitted). "A court accordingly may dismiss a claim on statute-of-limitations grounds at the pleadings stage if the complaint clearly shows the claim is out of

time." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (internal quotation marks omitted).  "[W]here dismissal under Rule 12(b)(6) is granted because the complaint was filed outside the allowable statute of limitations period, a dismissal with prejudice is appropriate." *Abrams v. Nat'l Westminster Bank PLC*, No. 11-CV-1667, 2012 WL 946792, at *3 (S.D.N.Y. Mar. 19, 2012), *aff'd sub nom. Abrams v. Royal Bank of Scotland Grp. PLC*, 593 F. App'x 17 (2d Cir. 2014).

### C.  *Rule 11*

Federal Rule of Civil Procedure 11(b) provides that:

> [b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).  A pleading or motion violates Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd*., 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002) (citing *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)).  Rule 11 sanctions may also be imposed where an attorney's "behavior was objectively unreasonable." *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (internal quotation marks omitted), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d

Cir. 2015) (summary order).  If a party is found to have violated Rule 11, they may be subject to sanctions.  Fed. R. Civ. P. 11(c).

Rule 11 also sets forth certain procedural requirements.  Rule 11 requires that "[a] motion must be served under Rule 5, but it must not be filed or presented to the court if the challenged paper . . . is withdrawn or appropriately corrected within 21 days after service."  Fed. R. Civ. P. 11(c)(2).  This provision is commonly known as the "safe harbor provision."

Courts have wide discretion in deciding when sanctions are appropriate.  *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion."); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("[S]anctions under Rule 11 are discretionary, not mandatory.").  Rule 11 sanctions should be granted with caution and applied only when "a particular allegation is utterly lacking in support."  *In re Highgates Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (internal quotation marks omitted).

## III.    Discussion

### A.  *Service of Process*

I first consider Bilotta's motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process.  To evaluate a Rule 12(b)(5) motion, courts look to Federal Rule of Civil Procedure 4, which "governs the content, issuance, and service of a summons."  *Herrera v. Manna 2nd Ave. LLC*, No. 20-CV-11026, 2021 WL 5235142, at *2 (S.D.N.Y. Oct. 22, 2021) (internal quotation marks omitted), *report and recommendation adopted*, 2021 WL 5234406 (S.D.N.Y. Nov. 10, 2021).  Under Rule 4(e)(1), an individual may be served following the state law for serving a summons in the state where the district court is located or where service is

made.  Fed. R. Civ. P. 4(e)(1).  Because Bilotta was served in Florida, I may consider Section

48.031(1)(a) of the Florida Statutes to determine whether service was proper.  Section

48.031(1)(a) provides that an individual may be served by "leaving copies [of the original

process and complaint, petition, or other initial pleading] at his or her usual place of abode with

any person residing therein who is 15 years of age or older and informing the person of their

contents."  Fla. Stat. § 48.031(1)(a).

Here, the process server averred that he served Ms. Christine Bilotta, who is over the age

of 15 and resides at 345 Ponte Vedra Boulevard, Ponte Vedra Beach, Florida 32082.  (Doc. 6.)

Although Mr. Bilotta was apparently not home at the time, he does not contest that 345 Ponte

Verde Boulevard is his usual place of abode.  Indeed, he concedes that he and his wife live at this

address.  (*See* Doc. 8-1 at 15 ("The process server hired by Plaintiff appeared at Defendant's

home and contacted Defendant's wife.").)  Therefore, substitute service on Defendant's wife was

valid as to Bilotta.

Nonetheless, Mr. Bilotta contends that service was improper because the summons and

complaint were left on his doorstep rather than directly handed to Ms. Bilotta.  Under Florida

law, however, Ms. Bilotta cannot avoid substitute service on her husband's behalf by simply

refusing to "accept any documentation."  (Doc. 6.)  *See, e.g.*, *Suntrust Bank v. Mola*, No. 6:09-

CV-428, 2009 WL 10712759, at *2 (M.D. Fla. June 11, 2009) (finding service of process was

proper under Section 48.031(1)(a) where the process server left a copy of the summons and

complaint on the ground by the front door of the defendant's home after his wife opened the door

but then walked away), *report and recommendation adopted*, 2009 WL 10712760 (M.D. Fla.

June 30, 2009); *Adan v. Bermudez*, No. 19-CV-20825, 2019 WL 13237715, at *4 (S.D. Fla. May

22, 2019) (finding service of process was proper under Section 48.031(1)(a) where the process

server "left the relevant documents on the doorstep, a place from which Ms. Bermudez could retrieve them, after calling the delivery to her attention"). Accordingly, service of process was proper under Rule 4(e)(1).

## B.    *Statute of Limitations*

Bilotta also moves to dismiss Garcia's unjust-enrichment claim as untimely, which must be evident on the face of the complaint to warrant dismissal under Rule 12(b)(6). *See Joffee v. Lehman Bros.*, No. 04-CV-3507, 2005 WL 1492101, at *6 (S.D.N.Y. June 23, 2005) (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). The parties appear to agree that a three-year limitations period applies to Garcia's unjust-enrichment claim, (Doc. 8-1 at 8; Doc. 16 at 6), and I accept that agreement, *see City of Almaty v. Sater*, 503 F. Supp. 3d 51, 64–66 (S.D.N.Y. 2020) (describing the competing approaches of New York State courts in determining the limitations period for unjust enrichment, but observing that federal courts in this District generally apply a three-year limitations period when such claims seek monetary relief). This period begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (quoting *Coombs v. Jervier*, 906 N.Y.S.2d 267, 269 (2d Dep't 2010)).

Here, the wrongful acts giving rise to the duty of restitution occurred in March and July 2013 when Bilotta amended his qui tam complaint—based on information purportedly provided by Garcia—to include allegations about the Diovan kickback scheme. *See Pricaspian Dev. Corp. v. Total S.A.*, 397 F. App'x 673, 675 (2d Cir. 2010) (summary order) (holding that the "wrongful act" giving rise to the claim for unjust enrichment "was the misappropriation of . . . confidential information"). The fact that the value of the restitution owed would not be known

9

until the United States paid Bilotta a qui tam relator award does not change the date of the wrongful act. *See JPMorgan Chase Bank, N.A. v. Maurer*, No. 13-CV-3302, 2015 WL 539494, at *6 (S.D.N.Y. Feb. 10, 2015) (holding that "an enrichment is actionable even when the enrichment is not realized as money until years later"). In arguing otherwise, Garcia confuses "the damages for unjust enrichment with the wrongful act." *Pricaspian*, 397 F. App'x at 675. "While authorities tend to refer for simplicity to receipt of a 'payment,' because the reported cases, nearly without exception, involve disputes over the payment of money . . . , an enrichment is actionable even when the enrichment is not realized as money until years later." *DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh*, No. 15-CV-2259, 2021 WL 3141672, at *17 (S.D.N.Y. July 26, 2021) (internal quotation marks and alterations omitted). Accordingly, Garcia's claim for unjust enrichment is time barred because it is based on conduct that occurred in 2013—nearly ten years before Garcia commenced this action.[3]

Garcia tries to avoid this conclusion by pointing to *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 520 (2d Cir. 2001). *Bancorp* arose from the closure of a bank in 1985 by the Office of the Comptroller of the Currency, after which the Federal Deposit Insurance Commission ("FDIC") immediately placed the bank into receivership. *Id.* at 512. The FDIC paid itself post-insolvency interest on certain office and legal expenses that began to accrue at the beginning of the receivership in 1985, although the first payment was not made until March 15, 1991. *Id.* at 512–13. The bank's majority shareholder brought suit against the FDIC for unjust enrichment, and the district court held that the claims were time barred, calculating the

---

[3] Although Bilotta also argues that Garcia's unjust-enrichment claim is barred by issue preclusion based on a lawsuit Garcia had previously filed against Mr. Young in state court, I need not address this issue because the claim fails on the merits. *See Miles v. City of New York*, No. 99-CV-7365, 2002 WL 31410346, at *2 n.2 (E.D.N.Y. Oct. 24, 2002) (declining to address whether the preclusion doctrines applied where, as here, the plaintiff's claims were dismissed on the merits).

starting date for the statute of limitations to be when the FDIC began to accrue post-insolvency interest in 1985.  *Id.* at 519–20.  The Second Circuit reversed, holding that "[t]he cause of action did not accrue or become more than speculative until the FDIC began to pay itself interest on March 15, 1991."  *Id.* at 520.

Plaintiff misconstrues the holding of *Bancorp*.  The Second Circuit was pointing out that prior to the FDIC's payment of interest to itself, no wrongful act had occurred, and thus no unjust-enrichment claim had accrued.  The focus, however, remains on the wrongful act giving rise to a duty of restitution, not the payment of money.  It just so happens that in *Bancorp*, those two things coincided.  Here, the wrongful act and the payment of money do not coincide.  This case is analogous to *Pricaspian Development Corp. (Texas) v. Royal Dutch Shell, PLC*, in which plaintiff alleged that the defendant had wrongfully used confidential information to obtain rights to an oil field in 1993.  382 F. App'x 100 (2d Cir. 2010) (summary order).  The Second Circuit held that the wrongful act occurred when the defendant misappropriated confidential information to obtain oil field rights, not when defendant began to see profits flowing from its oil field rights.  *Id.* at 103–04.  As in *Pricaspian*, the wrongful act occurred here when Defendant allegedly used Plaintiff's confidential information to advance his position, here by strengthening his legal claims in the New York suit.  Accordingly, Garcia's reliance on *Bancorp* is unavailing.

In a last-ditch effort to save his case, Garcia argues that Bilotta continued to wrongfully use his confidential information to negotiate a larger qui tam relator award.  However, there are no allegations in the Complaint to support this theory.  In fact, Garcia appears to acknowledge as much and, in a footnote of his opposition brief, seeks leave to amend the Complaint to add the missing facts.  (*See* Doc. 16 at 6 n.1 ("To the extent that the Court feels that Plaintiff needs to assert these allegations in the Complaint to make it more specific, Plaintiff would respectfully

request leave to amend the Complaint to include these additional points.").)  Although courts

must grant a plaintiff leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), courts

have "discretion to deny leave to amend implicitly by not addressing the request when leave is

requested informally in a brief filed in opposition to a motion to dismiss," *Rosner v. Star Gas*

*Partners, L.P.*, 344 F. App'x 642, 644 (2d Cir. 2009) (summary order) (internal quotation marks

omitted).  I therefore need not address Garcia's request for leave to amend his complaint.

    However, even if I were to consider the request, leave to amend is inappropriate where,

as here, the plaintiff provides no reason why he failed to include those facts earlier, or what those

facts would be.  *See Weaver v. Indymac Fed. Bank, FSB*, 488 F. App'x 522, 523 (2d Cir. 2012)

(summary order) (district court did not abuse discretion in denying motion to amend, "especially

since [the plaintiff] provided no explanation as to why he was unable to raise those claims

earlier"); *Colbert v. Rio Tinto PLC*, No. 17-CV-8169, 2019 WL 10960490, at *7 (S.D.N.Y. July

29, 2019) ("[I]t is well established that a district court 'acts within its discretion in denying' a

'conclusory request' for leave to amend a complaint that does not 'specify what additional

factual allegations plaintiff would include if leave were granted.'" (alterations adopted) (quoting

*WC Capital Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 334 (2d Cir. 2013))).

    Leave to amend is also properly denied where it would be futile.  *See Gwinn v. Laird*

*Superfood, Inc.*, 643 F. Supp. 3d 450, 459 (S.D.N.Y. 2022) (citing *Eastman Kodak Co. v. Henry*

*Bath LLC*, 936 F.3d 86, 98 (2d Cir. 2019)).  Here, even if Garcia had included factual allegations

supporting his contention that Bilotta continued to wrongfully use the confidential information

that Garcia shared in 2013, such allegations would not render Garcia's claim timely.  The

continuing violation doctrine, where applicable, provides an exception to the normal accrual date

of a claim.  *See Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999) ("There is indeed a

'continuing violation' exception to the normal knew-or-should-have-known accrual date of a []
claim.").  The doctrine "applies not to discrete unlawful acts, even where those discrete acts are
part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has
been subjected to some threshold amount of mistreatment," such as, for example, a claim for a
hostile work environment.  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration
adopted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)).  Thus,
under the continuing violation doctrine, "the limitations period begins to run when the defendant
has engaged in enough activity to make out an actionable claim."  *Id.* (alteration adopted and
internal quotation marks omitted).  Unlike a cause of action that accrues after a threshold amount
of wrongdoing, Garcia's claim for unjust enrichment accrued as soon as his information was
misappropriated.  The continuing violation doctrine is therefore inapplicable, rendering
amendment to that effect futile.  *See Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2020
WL 4587533, at *10 (E.D.N.Y. Apr. 21, 2020) (finding that the continuing violation doctrine is
inapplicable to unjust enrichment claims and noting that the Court is "unaware of" any authority
to the contrary), *report and recommendation adopted sub nom. Off. Comm. of Unsecured
Creditors of Exeter Holding, Ltd. v. Haltman*, 2020 WL 2832192 (E.D.N.Y. June 1, 2020).
Accordingly, Garcia's request for leave to amend the Complaint is denied.

### C.  *Sanctions*

Bilotta moves for sanctions against both Garcia and his counsel, Jonathan Ellery
Neuman, on the basis that the instant lawsuit is factually and legally frivolous, in addition to
being filed for an improper purpose.  Bilotta's attorney James Cecchi submitted a declaration
with the sanctions motion attesting to the fact that he first reached out to Neuman regarding the
allegedly sanctionable conduct on August 1, 2023.  (Doc. 21 ("Cecchi Decl.") ¶ 15.)  Neuman

responded by letter on March 21, 2024, standing by his client's allegations and refusing to dismiss the Complaint. (*Id.* ¶ 16.) In compliance with the safe harbor provision of Rule 11, Cecchi then served Neuman with a copy of the sanctions motion and supporting papers on September 26, 2024, and requested that he voluntarily agree to dismiss the action. (*Id.* ¶ 17.) No action was taken, and Defendant filed the instant sanctions motion on October 21, 2024. (Doc. 20.)

First, Defendant argues that a reasonable inquiry into the facts would have revealed that Garcia's claim is frivolous, justifying sanctions against both Garcia and Neuman under Rule 11(b)(3). (*See* Doc. 25 at 14–21.) Defendant asserts that various aspects of Garcia's claims are contradicted by the public record and thus should have been revealed to be false had any investigation occurred. For example, the Complaint asserts that Bilotta misappropriated confidential information about Novartis's promotion of the drug Diovan, but Garcia never worked for Novartis or promoted Diovan. (*Id.* at 14–15.) However, the Complaint readily acknowledges that the allegedly misappropriated information about Novartis and Diovan came not from Garcia, but from Garcia's co-relator, Allison Kelly, who worked for Novartis and briefly promoted Diovan. (*See* Compl. ¶ 29.) Although this may raise legal questions about Garcia's ability to recover for information allegedly misappropriated from Kelly, there is no factual misrepresentation about Garcia's personal knowledge.

Defendant also points out that Garcia and Kelly's allegations only mention Diovan in passing based on Kelly's experience with an American Express Travelers' Cheque Program scheme, making it "implausible" that Kelly had any material information that Bilotta, who was directly involved in promoting Diovan from 1999 to 2010, did not have. (Doc. 25 at 15–16.) Nor is there any indication that Kelly's allegations about the Travelers' Cheque program were

material to the Government's prosecution of the Bilotta action. (*Id.* at 15.) Rule 11(b)(3),

however, requires more than implausibility; it asks whether Plaintiff's allegations are "utterly

lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (internal

quotation marks omitted). It was at least possible that Kelly had some knowledge of wrongdoing

related to Diovan that Bilotta did not have, and if indeed Bilotta had misappropriated that

knowledge, the evidence of materiality would lie in timing: Bilotta amended his complaint in

March 2013 supposedly to add misappropriated information and the Government intervened in

Bilotta's case the following month. (*See* Compl. ¶¶ 33–34.) Although Defendant believes this to

be farfetched, Plaintiff's assertions on this point are not sanctionable.

      Nor do most of the remaining factual contentions made by Plaintiff and highlighted by

Defendant justify sanctions. The Complaint states that Bilotta "did not have the first-hand

knowledge that he claimed to have had, as he was out on medical leave during the time period

when he claimed to have done the illegal activity on behalf of Novartis." (Compl. ¶ 52.)

Defendant points out that while Bilotta was on disability leave in 2010, he was employed by

Novartis for many years while the relevant scheme was in effect and thus would have exposure

to the illegal practices irrespective of any disability leave. (Doc. 25 at 17.) In support of this,

however, Defendant cites to Bilotta's declaration submitted alongside the sanctions motion, not

to any public record that Plaintiff could be held responsible for investigating at the time of the

Complaint's filing. In addition, the Complaint speculates "[u]pon information and belief" that

Bilotta's qui tam complaint was nearly dismissed before March 2013, (Compl. ¶¶ 32–33), but

Defendant points out that the case was under seal pursuant to a confidential Government

investigation at that time and thus no dismissal motion could have been contemplated, (Doc. 25

at 16). While this inconsistency should have been caught by Plaintiff, I decline to impose

sanctions on the basis of a singular speculative claim.

Defendant also argues that Garcia's theory would require the Government to be complicit in Bilotta's alleged misappropriation due to the Government's duty to investigate the relator, verify his information, and determine the relator's share of any qui tam award in proportion to his first-hand knowledge of the fraud.  (Doc. 25 at 17–20.)  Yet Garcia does not allege Government complicity, and in Defendant's view, this shows that Garcia's claims are factually unsupported.  It is equally plausible, however, that the Complaint does not allege Government complicity because Plaintiff's theory is that Bilotta claimed firsthand knowledge of allegedly misappropriated information, and the Government credited Bilotta's representations.  As unlikely as this may be, Defendant does not explain why that would be a sanctionable theory of the case.

Defendant also indicates that the fact that Garcia and Kelly only filed their first lawsuit after the Bilotta action settled, when they must have been following the Bilotta action closely to have known to request consolidation in May 2013, shows that they "were only acting opportunistically."  (*Id.* at 20–21.)  However, Defendant identifies no actual misrepresentation related to this.  (*See id.* at 20 ("Of course, the Complaint does not convey when Garcia and Kelly discovered Bilotta's and the Government's purported appropriation of Kelly's information.").)  Acting opportunistically, without more, is not a basis for sanctions.  *Cf. Alabsi v. City of Cleveland*, No. 22-3375, 2023 WL 334893, at *4 (6th Cir. Jan. 20, 2023) ("[A] party's motivation to obtain money alone cannot constitute bad faith for filing a lawsuit because monetary recovery is a quintessential aspect of litigation." (citations omitted)).

Second, Defendant asserts that a reasonable inquiry into the law would have revealed that Garcia's claim is frivolous on both statute-of-limitations and collateral-estoppel grounds, justifying sanctions against Neuman under Rule 11(b)(2).  (*See* Doc. 25 at 21–22.)  I find that the

legal arguments made in this suit, "however faulty, were not so untenable as a matter of law as to necessitate sanction." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990).  As to statute of limitations, Plaintiff mistakes the accrual of an unjust-enrichment claim, which occurs on the date of the wrongful act, with the accrual of damages resulting from the wrongful act, based on a misreading of *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 520 (2d Cir. 2001).  There is no evidence that this argument, while incorrect, is anything other than a good-faith misreading of the case law.  With regard to collateral estoppel, an issue which I did not reach in my merits decision, Plaintiff argues that he is not estopped from bringing this claim by the state-court decision, which dismissed a suit brought by Garcia against Eric Young—Bilotta's qui tam attorney who met with Garcia—for breach of his fiduciary duty on statute-of-limitations grounds.  I agree with Plaintiff that it is not frivolous to assert that the issue of whether Bilotta was unjustly enriched and whether the statute of limitations has run against Bilotta was not "actually litigated" in an earlier state-court action bringing a different claim against Eric Young.

Finally, Defendant argues that sanctions should be imposed under Rule 11(b)(1) because this action was filed to harass and extort Bilotta.  (Doc. 25 at 22–24.)  In support of this contention, Defendant points to Plaintiff's submission of a declaration by Robert Dobler as an exhibit in support of Plaintiff's opposition to Defendant's motion to dismiss.  (Doc. 16-3 ("Dobler Decl.").)  The Dobler Declaration's inaccuracy is the most troubling issue identified by Defendant, and I find that sanctions are warranted on that basis, albeit under Rule 11(b)(3) rather than Rule 11(b)(1).

Robert Dobler worked at Novartis and managed Bilotta during part of his time at the company.  (Dobler Decl. ¶ 1.)  In his declaration, Dobler states that he filed a qui tam action in March 2014 that was ultimately dropped by the Department of Justice.  (*Id.* ¶¶ 2, 4.)  Dobler

asserts that Bilotta took information from Dobler's complaint, specifically details of an "illegal [Physician Integrated Learning] Program that had been taking place at Novartis," and added it to his own qui tam complaint, passing it off as personal knowledge. (*Id.* ¶ 4; *see also* Doc. 22 ("Bilotta Decl.") ¶ 3.) Dobler goes on to say that he believes that Bilotta misappropriated Garcia's allegations much as he misappropriated Dobler's own allegations. (Dobler Decl. ¶ 5.)

Putting to the side the procedural impropriety of submitting new evidentiary contentions in support of an opposition to a motion to dismiss, *see Timberg v. Toombs*, No. 20-CV-6060, 2022 WL 954739, at *3 n.4 (E.D.N.Y. Mar. 30, 2022) ("The submission of . . . an affidavit [adding new facts] in opposition to a motion to dismiss is improper as courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss." (citation modified)), I find that the allegations contained in the Dobler declaration are "utterly lacking in support" and "objective[ly] unreasonable[]." *Storey*, 347 F.3d at 387–88 (internal quotation marks omitted). It cannot be the case that Bilotta misappropriated Dobler's allegations from his complaint when the operative complaint in Bilotta's qui tam action was publicly filed on July 10, 2013, and Dobler did not even commence his qui tam lawsuit until March 2014. Not only are these dates publicly available information that any reasonable investigation would have uncovered, the timeline of the Bilotta action forms a core part of the narrative of Garcia's allegations and is laid out in detail in Garcia's Complaint, and thus should have been known to Plaintiff without any investigation. (*See* Compl. ¶ 40 (noting that Defendant amended his complaint on July 10, 2013).) Plaintiff even filed a copy of the docket sheet in Bilotta's qui tam action as another exhibit in support of his opposition to Defendant's motion to dismiss, (*see* Doc. 16-2), meaning that Plaintiff would have only had to compare his own exhibits to discover the inconsistency.

In response to Defendant pointing out this blatant misrepresentation, Plaintiff's opposition brief only says: "Defendant also complains that I somehow should have assumed that a non-party who submitted a declaration under oath was lying, something that Defendant has not established in the slightest." (Doc. 29 at 7.)  As a preliminary matter, I assume the "I" in that response is Neuman, who signed the brief and would be responsible for substantiating a nonparty's assertions in the declaration.  *See J.W. Sandri, Inc. v. Randy Howe's Sunoco, Inc.*, No. 11-CV-23, 2012 WL 601908, at *6 (D. Vt. Feb. 22, 2012) (imposing monetary sanctions against an attorney directly, instead of against plaintiff, where the attorney "decided how to present the testimony of Plaintiff's witnesses," and in so doing "breached the duty of reasonable inquiry" (citing *Mike Ousley Prods., Inc. v. WJBF–TV*, 952 F.2d 380, 382–83 (11th Cir. 1992))).  Neuman's response is insufficient.[4]  Defendant established that the Dobler declaration is based on an allegation that cannot be true, yet Neuman does not address this fact in any way and offers no explanation of the Dobler declaration's misstatements.  Neuman's statement that he is being asked to "assume that a non-party who submitted a declaration under oath was lying" betrays a misunderstanding of Rule 11's standard, which asks that counsel make "an inquiry reasonable under the circumstances" to ensure that "factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(3).  The most cursory inquiry, such as a review of Plaintiff's own Complaint or other exhibit submissions, would have revealed the factual impossibility of the claims in the Dobler declaration.

I find that the submission of the Dobler declaration justifies the imposition of sanctions against Neuman under Rule 11(b)(3).  Having determined that some sanction is appropriate, I

---

[4] Neuman's entire opposition brief to Defendant's sanctions motion is woefully deficient.  Neuman fails to address any of Defendant's arguments on the merits, instead inserting a block quote that spans three pages of a seven-page brief and invoking the *Noerr-Pennington* doctrine, which is inapplicable to the issues raised in the sanctions motion.

have "'significant discretion in determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.'"  *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).  In consideration of the need to impose the minimum sanction sufficient to deter similar conduct in the future, Neuman is required to pay Defendant's reasonable attorney's fees incurred in bringing the sanctions motion.  Defendant is instructed to submit an affidavit and time records within fourteen (14) days of this Opinion & Order setting forth the total hours spent and legal services rendered in connection with the sanctions motion, as well as the hourly rate of pay for those who worked on the sanctions motion, so that I can evaluate the reasonableness of the claimed fees.

### IV.    <u>Conclusion</u>

Bilotta's motion to dismiss is GRANTED with prejudice.  *See Abrams*, 2012 WL 946792, at *3.  Bilotta's motion for sanctions is GRANTED IN PART and DENIED IN PART. Defendant's counsel is instructed to submit an affidavit and time records within fourteen (14) days of this Opinion & Order setting forth the total hours spent and legal services rendered in connection with the sanctions motion, as well as the hourly rate of pay for those who worked on the sanctions motion.  Defendant is permitted to file documents under seal as necessary to protect privileged information, accompanied by redacted versions of the documents on the public docket.  The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 8 and 20.

SO ORDERED.

Dated: September 10, 2025
       New York, New York

Vernon S. Broderick
United States District Judge